## HAWKINS *vs.* BROWN & JEFFERY.

Prior to June 23, 1855, the plaintiff and defendants were partners, in the business of manufacturing machines, at Corning, in this state. On that day they agreed to dissolve the partnership; the defendants to give up to the plaintiff certain notes held by the former against him, for $3000, and to give him a shingle machine, and also to construct for him an engine and bill of machinery, which the plaintiff was to set up and run until, from one half the net earnings thereof, to be received by the defendants, they were fully paid for such machinery, less the sum of $300, which was to be deducted from the price. The defendants manufactured the engine and machinery, but on demand by the plaintiff, refused to deliver the same, on the ground

that the plaintiff had purchased a lot of land in Pennsylvania, on which he proposed to erect the said machinery ; that for the purchase money thereof, $1541, he had confessed judgments which had been duly docketed, so as to become liens upon the land; that by the law of Pennsylvania the erection of this machinery upon the premises would make such machinery a part of the realty, so that the judgments would attach to the same as liens, and a sale of the land would pass title to such machinery to the purchaser.

*Held,* 1. That the plaintiff could not recover of the defendants for the price of the shingle machine, in the absence of any proof of a previous demand and refusal of delivery.

2. That in respect to the engine and machinery, if the law of Pennsylvania were as claimed by the defendants, the plaintiff had no right to require the delivery of that property in order that he might turn it over to pay, or secure, a precedent debt, in fraud of the defendants' claim for the purchase money.

3. That the defendants being, by the express terms of the contract, authorized to retain the title to the machinery until the purchase money was paid, they were not bound to relinquish their title to the property, or to allow the property to be sent out of the state, whereby they would be deprived of the same, or their lien upon it.

4. That evidence to show that the law of Pennsylvania was as claimed by the defendants, was admissible, and ought to have been received. JOHNSON, J., dissented.

THE plaintiff and defendants, being partners, under the name of Brown, Jeffery and Co., on the 23d of June, 1855, made an agreement in writing, by which the latter agreed to purchase of the former his interest in the partnership property and business, and pay him, for the same, certain notes which the said Brown, Jeffery & Co. held against him for $3000, he paying the interest thereon ; and further agreed to give the plaintiff a shingle mill in good condition for business, and also to manufacture and construct a bill of machinery, engine, &c. which the plaintiff was to set up and run, the defendants to have one half the net earnings thereof till the whole bill should be paid, less $300 to be deducted from the bill, when the plaintiff should have paid for the same, except the said sum of $300, when the defendants were to give a title to the machinery, and upon which payment they were to deduct the said $300 from their regular price of the same, and the plaintiff, in consideration of the premises, agreed to sell all his

interest in the business of Brown, Jeffery & Co.; and it was also understood and agreed that the machinery, except the shingle machine, should belong to the defendants till a full performance of the agreement by the plaintiff. The price and capacity of the engine and machinery was fixed by the agreement. This action was brought for a breach of the agreement. The alleged breach consists in the refusal of the defendants to manufacture and construct the engine and machinery, and to allow the plaintiff to set up and run the same; and the plaintiff claimed, by way of damages for the breach, the $300, which, by the agreement, was to be deducted from the bill of machinery upon payment therefor, the expense incurred by the plaintiff in making the necessary preparation to set up and run the machinery, and the price of the shingle machine which he did not want, and declined to take without the other machinery. The defense, as set up in the answer and by the evidence on the trial, consisted of, 1. A general denial. 2. Allegations of performance as respects the notes and the shingle machine. 3. Breach of the contract by the plaintiff in refusing to set up and run the machinery in the state of New York, or elsewhere than in the state of Pennsylvania, and upon premises which he does not own, or which are incumbered to their full value, and his refusal to give the defendants security against the probable loss of the machinery, by reason of his not having a free and unincumbered title to the premises on which he proposed to set up and run the machinery. 4. An offer on the part of the defendants to allow the plaintiff to set up and run the machinery at any place in the state of New York or elsewhere on premises to which the plaintiff has a title, or which is not incumbered to an amount which will jeopard the title of the defendants, and the refusal of the plaintiff to accept such offer.

Upon the trial, after the plaintiff had gone through with his case and rested, the defendants offered to prove a conveyance by one Devlin to the plaintiff of the land at Lockhaven, in the state of Pennsylvania, on which the plaintiff proposed

to set up and run the machinery; that the plaintiff, to secure the purchase money, gave Devlin judgment notes on which judgment, had been entered, and which were a lien on said land; and that by the law of that state, placing the machinery on the said land would subject the same to the lien of the judgment, and the same would pass to the purchaser under a sale upon the judgment. To the exclusion of this evidence by the court, on objection on the part of the plaintiff, the defendants excepted. The defendants having given evidence on their part in answer to the plaintiff's case, and rested, the court charged the jury that if the defendants were guilty of a breach of the agreement and the plaintiff had offered to perform, the latter was entitled to recover by way of damages the amount expended by him in preparing to set up the machinery, amounting to $746.67, deducting $400, which he had realized out of that sum, together with the $300 which by the terms of the contract was to be deducted from the bill of machinery, and the value of the shingle machine, proved at $200. The court also charged the jury that the contract for the machinery and the shingle machine was entire, and the plaintiff was not bound to accept the latter without the former. The defendants excepted to so much of the charge as related to the allowance by way of damages of the $300 which was to be deducted from the price of the machinery; also to so much of the charge as related to the allowance of the $200 as the value of the shingle machine; also to that part of the charge by which the jury were instructed that the contract was entire, and the plaintiff was not bound to accept the shingle machine without the other machinery; also to the refusal of the court to charge that as to the shingle machine the contract was performed.

The jury found a verdict in favor of the plaintiff for $846.67, and from the judgment entered thereon the defendants appealed.

*Wm. Irvine,* for the appellants.

*Geo. T. Spencer,* for the plaintiff.

E. DARWIN SMITH, J.   From the agreement given in evidence on the trial it appears that, previously to June 23d, 1855, the plaintiff and defendants were partners in business, engaged in manufacturing machines, at Corning, in this state.   On that day they agreed to dissolve the partnership, the defendants to give up to the plaintiff certain notes held by the firm against him, for $3000, and to give him a shingle machine, and also to manufacture and construct for him an engine and bill of machinery, which the plaintiff was to set up and run until, from one half the net earnings thereof to be received by the defendants, they were fully paid for such machinery, less the sum of $300, which was to be deducted from the price, according to the regular rates of work at the shop of the company.   No time being fixed for the delivery of these notes, the true construction of the contract would require them to be delivered simultaneously with, or immediately upon, the execution of the contract, and they were doubtless so delivered.   The contract was thereby, at that time, so far executed as that the partnership between the parties then became and was, *ipso facto,* dissolved.   So far as related to the delivery of the engine and machinery the contract was necessarily executory, for such machinery and engine were thereafter to be constructed.   But the dissolution of the partnership was clearly not suspended till such machinery and engine were constructed and delivered, and did not depend upon the fulfillment by the plaintiff of this part of the contract.   It was the obvious intent of the parties that such partnership should be dissolved in fact immediately.   The shingle machine was also to be delivered immediately, and its delivery could have been instantly required by the plaintiff; and such delivery was in no way connected with the delivery of the engine and ma-

chinery thereafter to be manufactured. It was error, therefore, I think, to allow the plaintiff to recover for the price of the shingle machine, the same never having been demanded and delivery refused.

But the more important inquiry relates to the engine and machinery which the defendants were thereafter to manufacture. The agreement to manufacture and deliver this property is, I think, to be construed and enforced like all other executory agreements, to sell and deliver property at a future time. The defendants were clearly bound to fulfill the contract on their part, unless they had some just and legal excuse for their non-performance; and this presents the chief point in controversy in the cause.

It appears that the defendants manufactured the engine and machinery in question, and on demand by the plaintiff refused to deliver it. In excuse for such non-performance, the defendants offered to prove, on the trial, that the plaintiff had purchased a lot of land at Lockhaven in Pennsylvania, on which he proposed to erect the machinery in question; for the purchase money for which, amounting to $1541, he had confessed judgments which had been duly docketed, so as to become liens upon said land. They also offered to show, that by the law of Pennsylvania the erection of this machinery upon the premises covered by said judgments, would make such machinery a part of the realty, as to all the world except as between landlord and tenant, so that the judgment would attach to the same as liens, and that a sale of the land would pass the title to such machinery to the purchaser. And the defendant also offered to show that this would be the case, notwithstanding, by the terms of the contract, the defendants were to retain the title till the purchase money was fully paid. These offers were overruled by the court, and the defendants duly excepted.

I cannot see why this proof was not admissible, and think it ought to have been received. If the law of Pennsylvania were, as is assumed in the offer, and we are bound so to con-

sider it in passing upon these exceptions, then it seems to me quite clear that the plaintiff had no right to require the delivery of such engine and machinery in manner and form as demanded. He proposed, in effect, to turn over this machinery to pay or secure a precedent debt to another creditor, and deprive the defendants of their property without payment of the purchase price, and contrary to the plain intent of the contract. Every contract is to be construed with reference to the law of the place where it is made and where the contracting parties reside, unless it expressly has reference to the law of some other state or country. By the express terms of this contract, the defendants were to retain the title to the machinery until the purchase money therefor was paid. They clearly were not bound to relinquish their title to this property, or to allow it to be sent out of the state, whereby they would be deprived of their property, or of their lien upon it, by operation of law. They never contracted to do any such thing. The right of the defendants to refuse to deliver the engine and machinery under such circumstances, it seems to me, are as plainly equitable as the right of stoppage *in transitu* in case of the insolvency of the vendee, or the right of a vendor under all circumstances to refuse to deliver, and to reclaim property after delivery, when the vendee has made the purchase, or procured possession in contemplation of insolvency, or with the design to assign or transfer the property to other creditors. It is true, as is urged by the plaintiff's counsel, the defendants were bound to perform their contract; but their duty was to perform it *according to its true intent and meaning*. It was not the intent or meaning of this contract that the defendants should deliver this machinery *absolutely*, or that they should in any way relinquish their title to it until the purchase money was fully paid. To require them to deliver when such would be the consequence, would be *to require something not within the terms, provisions or intent of the contract*—to require something clearly unjust and inequitable. To insist on performance with such an

---
Hawkins *v.* Brown.
---

object and intent on the part of the plaintiff, was substantially to insist on the right to commit a palpable fraud upon the defendants. Where performance is required for such an object, or will be attended with such results, it has ceased to be a duty. The right to refuse performance in such a case is absolute. It is part of the right of self-defense, or of the right to protect one's own property from unjust or fraudulent invasion or sacrifice, inherent in all men. But it is said by the counsel for the plaintiff, that if the rule of law in Pennsylvania be as claimed, there is no rule or comity which requires the courts of this state to respect that law, or allow it in any form to be acted on or enforced here. The fact that such is the law of that state, is a sufficient reason why we should not compel our own citizens—the rule of law on the subject being different in that state—to subject their property to the jurisdiction of such foreign law. We have nothing else to do with the laws of Pennsylvania. We are not called upon to enforce them. We are simply called upon to protect our own citizens from fraud and injustice attempted to be perpetrated through the instrumentality of such laws. No court of equity would enforce this contract specifically, by compelling the defendants to deliver the machinery in question to be immediately sent by the plaintiff to the state of Pennsylvania, and subjected to the lien of the judgments in that state referred to. And if this be so, the same facts are, or ought to be, a sufficient excuse for non-performance at law. The defendants, as I hold, have not refused performance according to the true intent and meaning of the contract. They are not guilty of any breach of the contract. The proof shows that in fact they were ready and willing to deliver the machinery, provided their security should remain unimpaired. They were not bound to deliver upon any other terms or conditions. It is true that the jury have found that the defendants refused to deliver, but they could hardly do otherwise under the charge, for the defendants had confessedly refused to deliver the machinery to be sent out of the state. But if the question had

been put to the jury, whether the refusal to deliver, &c. was without *justifiable cause*, they could not reasonably have found for the plaintiff, except upon the hypothesis that the defendants were bound to deliver, absolutely, whatever was done or proposed to be done by the plaintiff, with the property. This was the theory of the charge. I think it a mistaken one, and that there should be a new trial, with costs to abide the event.

T. R. STRONG, J., concurred.

JOHNSON, J., (dissenting.) I am unable to agree with my brother SMITH, in his views of the law applicable to this case. To hold the defendants' excuse, for not delivering the engine in question, according to their agreement, a valid one, would, as it seems to me, introduce a novel and dangerous element, into the law of contracts for the sale and delivery of property. The defendants had undertaken, for a valuable consideration, to manufacture this engine and to sell and deliver it to the plaintiff, at a reduced price, to be paid for by him in a particular manner. They manufactured it, but refused to deliver it, when demanded by the plaintiff. The only ground of refusal was, that in case they delivered it, the plaintiff contemplated putting it in operation upon certain premises in the state of Pennsylvania, which he had then purchased for that purpose, and for which he had given judgment notes, upon which judgments had been entered and became liens upon the land. The effect of this, as the defendants alleged and offered to prove, according to the laws of that state, would be to give the judgment creditor a lien upon the engine, when thus placed upon the premises, superior to their title. Assuming that the plaintiff would have no right under the agreement, after the property was delivered to him by the defendants, to dispose of it, or place it in any situation by which the defendants would be deprived of their title, which by the agreement they were to retain, it by no means follows that the defend-

Hawkins *v.* Brown.

ants would for that reason be justified in their refusal to perform.

Each party to a contract is bound to perform, according to its terms, and the true intent and meaning of its provisions; and the remedy of each, for a refusal to perform by the other, is, by action upon such contract, to recover damages. Had the plaintiff, after the performance by the defendants, been guilty of any breach on his part, they would have had their remedy by action against him upon the contract, to recover all the damages they had sustained by reason of such breach. They do not place their refusal to perform, upon any ground of fraud or insolvency on the part of the plaintiff. There is no such element in this case, and no pretense that the plaintiff is not abundantly able to respond in damages for any breach of the agreement, on his part. Their justification is placed simply and solely upon the apprehension, or expectation on their part, or if you please, upon a well grounded assurance, that if they performed, the plaintiff might not perform on his part, but, on the contrary, would do something which he had no right, according to the intent and meaning of the contract, to do, with the property. Will this justify the refusal by a party to perform his agreement? If it will, I yet have to learn that such is the law. Fraud, as we all understand, vitiates all contracts, and absolves the innocent party from all obligation to perform on his part, if he elects to rescind upon that ground. But here is no fraud, and no insolvency, alleged or proved; and how the defendants can possibly be allowed to refuse performance under such circumstances, without giving the other party a right of action, is more than I am able to understand. Was it ever before heard, that one party to a contract would be justified in refusing to perform it, simply because the other party might break it afterwards? I think not. The defendants do not pretend that the plaintiff had broken the contract, on his part. What they pretend is that he contemplated breaking it after performance by them. And this must be held equivalent to an actual breach, or a fraud, by the plain-

tiff, before the defendants can be justified in refusing to perform. The defendants here did not even rescind the contract, nor attempt to do so. Indeed it is plain there is no ground upon which they could have rescinded, had they offered it. But they did not; they kept what they had received, and refused to pay what they agreed to pay for it, and the plaintiff is to be held remediless. The plaintiff had fully performed the agreement on his part, except paying for the engine, which he was not to pay for presently. That was a purchase upon a long credit, and part of the price was obviously paid in the transfer by the plaintiff of his interest in the partnership property. The case was evidently tried upon the assumption that the plaintiff had transferred all his interest in the partnership property, in part performance of the agreement on his part. The fact is expressly alleged in the defendants' answer. In cases of fraud, even where there has been part performance, the law will not allow the innocent party to rescind and avoid the contract, without restoring what he has received under it, and placing the other party in *statu quo*. But here the defendants are allowed to refuse performance with impunity, without rescission or restoration. It is suggested in the prevailing opinion, that if the question whether the defendants ought to have delivered the engine, had been submitted to the jury, they might have rendered a different verdict. But as the question is one of law strictly, it would have been clearly erroneous to submit it to a jury.

The only doubt I have had in regard to the case, was in respect to the measure of damages adopted at the circuit, in allowing the defendants to recover the value of the shingle machine. It is evident, I think, on the whole case, that what the defendants promised to pay the plaintiff, for his interest in the partnership property, was the amount of the reduced price of the engine, and the shingle machine; and by allowing him to recover these two items, he was only recovering back, of the defendants, what he had paid them in the transfer of his partnership interest. By the terms of the contract the de-

Hawkins *v.* Brown.

fendants were to give the plaintiff a shingle machine in good condition for business. It seems from the evidence that at the time the contract was entered into, the defendants had such a machine, at Lockhaven, where the plaintiff proposed to put up and operate the engine, and that it was understood between the parties, that the plaintiff might take it there. The plaintiff never did take it, but left it where it was when the contract was made. He might have taken it, and the reason he assigns for not taking it is, that he expected to run it, with the engine which the defendants agreed to deliver, and they having refused to deliver the engine, according to their agreement, he was without any motive power to operate the machine in the manner contemplated by the agreement, and declined accepting it unless he could have the engine also. It is clear, I think, that the title to the shingle machine did not vest in the plaintiff by the agreement. And inasmuch as he never reduced it to his actual possession, it never became his property. When the defendants, therefore, refused to deliver the engine, according to the agreement, the plaintiff had the right to treat the whole of the contract, not actually performed by them, as broken, and to decline taking this machine. The defendants clearly could derive no advantage, by tendering the shingle machine, and at the same time refusing to deliver the engine. They should either perform, or offer to perform, the whole contract; and are not permitted to say that the plaintiff was offered, and might have taken, part, notwithstanding their refusal to perform the other part. If the title to the shingle machine never actually vested in the plaintiff, and the contract has been broken by the defendants, its value is the subject of recovery as part of the damages. The other items were, I think, clearly correct. I am therefore of the opinion that the judgment should be affirmed.

New trial granted.

[Monroe General Term, December 5, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.]